**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 18-cv-3209-WJM-STV

HEATHER PRICE,

     Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.,

     Defendant.

---

**ORDER DENYING IN PART AND RESERVING RULING IN PART ON
DEFENDANT'S CHOICE-OF-LAW MOTION**

---

This is a dispute over underinsured motorist ("UIM") benefits. Plaintiff Heather Price ("Price") sues American Family Mutual Insurance Company ("American Family") for failing to pay UIM benefits allegedly owed as compensation for injuries sustained in a February 2017 auto accident. In addition to her traditional breach of contract claim, Price also brings claims for common-law bad faith breach of insurance contract, unreasonable delay or denial of insurance benefits in violation of Colorado Revised Statutes §§ 10-3-1115 and -1116, and deceptive trade practices in violation of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6-1-101 *et seq.* This matter is set for trial on September 14, 2020.

Currently before the Court is American Family's Motion for Determination of Law that Indiana Law Applies. (ECF No. 28.) The Court denies this motion as to Price's common-law bad faith claim, and otherwise reserves ruling. On those reserved issues, the Court will set an evidentiary hearing. For reasons explained below, however, the

Court will set that hearing for the day after the upcoming trial is scheduled to conclude.

## I. LEGAL STANDARD

The parties appear uncertain about the appropriate standard for the Court to apply. The standard of review section in American Family's motion begins with a discussion of choice-of-law principles, but then states the summary judgment standard of review, "[i]n the event this court views [the motion] as a Motion for Summary Judgment." (ECF No. 28 at 4.)[1] Price says that she "agrees with [American Family's] recitation of the applicable legal standard." (ECF No. 32 at 7.) And the parties have briefed the motion largely as if a summary judgment motion, including American Family's itemized statement of material facts supported by attached evidence, and Price's paragraph-by-paragraph response to that statement, supported by evidence of her own. (ECF No. 28 at 2–3; ECF No. 32 at 2–7.)

The purpose of summary judgment briefing is to identify whether genuine disputes of material fact exist, thus requiring a jury (if requested) to resolve. Here, both sides have requested a jury. (ECF No. 3 at 5; ECF No. 12 at 6.) However, it is not clear that genuine disputes about the facts going to a choice-of-law analysis must be submitted to a jury. The Court has located one case in which a court held that "the defendant was entitled to the jury's finding of the facts which were determinative of the choice of law principles." *Marra v. Bushee*, 447 F.2d 1282, 1285 (2d Cir. 1971). However, since then, the consensus among courts that have considered the issue is that factual questions going to choice of law are akin to factual questions going to jurisdiction and venue, and are thus resolvable by the Court. *See Nautilus Ins. Co. v.*

[1] All ECF page citations are to the page number in the CM/ECF header, which does not always match the document's internal pagination, particularly in exhibits.

*Reuter*, 537 F.3d 733, 742–43 (7th Cir. 2008); *Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 386 (5th Cir. 1983); *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1161–62 (N.D. Cal. 2016); *Toll v. Tannenbaum*, 982 F. Supp. 2d 541, 551–52 (E.D. Pa. 2013); *Chance v. E.I. Du Pont De Nemours & Co., Inc.*, 57 F.R.D. 165, 168–69 (E.D.N.Y. 1972); *see also* Willis L. M. Reese et al., *The Role of the Jury in Choice of Law*, 25 Case Western L. Rev. 82 (1974).

The Court is persuaded by this latter line of authority. Accordingly, the Court takes the parties' briefing to be framing the question of whether an evidentiary hearing is needed on facts going to choice of law, or, conversely, whether it can be resolved on the papers.

## II. BACKGROUND

### A. Undisputed Facts

The parties agree on the following:

The specific insurance policy at issue in this lawsuit is an "Indiana Family Car Policy" covering a 2013 Volkswagen Passat from October 23, 2016 to March 1, 2017 ("Policy"). (ECF No. 28-2 at 2–3.) American Family agent Russell Bereolos (of Munster, Indiana) arranged for the Policy. (*Id.* at 2.)

The Policy provides UIM coverage limits of $100,000 per person/$300,000 per incident, and medical expense coverage of $10,000 per person. (ECF No. 28 at 3, ¶¶ 9–10.) The Policy also states that the UIM policy limits will be reduced by any liability payment from a party responsible for an accident, and by any payments under the Policy's medical expense coverage. (*Id.* ¶¶ 11–12.)

Since it was driven off the lot in 2013, the Passat was registered in Indiana and had Indiana license plates. (ECF No. 28 at 2, ¶ 7.)

Price was in a car accident in Centennial, Colorado, on February 8, 2017, during the Policy term.  (*Id.* ¶ 2.)  Price settled with the other driver for $50,000, which was the other driver's policy limit for liability.  (ECF No. 3 ¶ 7; ECF No. 12 ¶ 7.)  American Family also paid $10,000 under the medical expense coverage.  (ECF No. 28 at 3, ¶ 14.)  But, as the existence of this lawsuit demonstrates, American Family has not paid any amounts under the UIM coverage.

## B.    American Family's Story

The following is from American Family's perspective, and is mostly disputed by Price:

Plaintiff's father, James Moore, acquired the Passat and paid for its insurance, but let Price drive it.  (*Id.* at 2, ¶¶ 1, 3.)  Mr. Moore was the only named insured on the Policy, and the address on the Policy is his address in Indiana.  (*Id.* ¶¶ 4–5.)  Mr. Moore purchased the Policy in Indiana.  (*Id.* ¶ 6.)  Finally, American Family "was not aware [that Price] was a driver of the vehicle and was not aware [that] the car was located in Colorado at any time prior to the February 8, 2017, car accident."  (*Id.* at 3, ¶ 8.)

## C.    Price's Story

Price contests American Family's assertions as follows:

Price has lived in Colorado since 1999, except for an eighteen-month period—approximately February/March 2012 to August 2013—when she lived with her parents in Indiana while going through a divorce.  (ECF No. 32-1 ¶¶ 2, 6.)  Sometime before August 2013, her father, Mr. Moore, leased the Passat for Price to drive, and insured it through American Family, via Mr. Bereolos.  (*Id.* ¶¶ 3, 4.)  Price, not her father, paid the insurance premium on that policy and on subsequent renewal policies.  (*Id.* ¶¶ 8–9.)

Soon before Price returned to Colorado in August 2013, she called Mr. Bereolos

"and told him in no uncertain terms that [she] was moving back to live in Colorado and was taking the Passat with [her]." (*Id.* ¶ 4.) She says that "Mr. Bereolos assured [her] that [she] would be covered after moving the Colorado and assured [her] that he could write insurance in Colorado." (*Id.* ¶ 5.)

Price says that Mr. Bereolos's secretary, Jeanette Luce, "knew from [Price's] communications with her as early as January 2014, that [Price] resided in Colorado with the Passat." (*Id.* ¶ 10.) She cites no evidence to support this. She may be alluding to a document attached in support of a different assertion, namely, an e-mail string beginning in January 2014 in which Price and Ms. Luce go back and forth about automatic payment details. (ECF No. 32-6 at 2–5.) At the apparent end of that string in March 2014, Price asks Ms. Luce to call her at a number with a Metro Denver area code. (*Id.* at 5.)

In June 2015, a hailstorm damaged the Passat here in Colorado. (*Id.* ¶ 7.) Price herself made a claim on the then-existing predecessor to the Policy. (*Id.*) American Family sent an appraiser or an adjuster to Price's home in Colorado, and sent a check for the repair costs to Price's home in Colorado. (*Id.*) The car was also repaired in Colorado. (*Id.*)

In October 2016—the same month the Policy issued—Price bought the Passat off-lease and contacted Ms. Luce "to make sure she added [Price's] name to the Passat policy." (*Id.* ¶ 11.) In November 2016, Price e-mailed Ms. Luce to point out that she had misspelled Price's first name on policy forms she had sent to Price. (*Id.*) Later that same day, Ms. Luce replied, apologized for the error, and told Price "that she had manually added [Price's] name to the dec[laration] page for the Passat policy." (*Id.*)

Soon after, Price received insurance cards from American Family showing her as the named insured on the Policy.  (*Id.* ¶ 12.)

As noted, the car accident that eventually led to this lawsuit happened about three months later, on February 8, 2017.  (*Id.* ¶ 15.)

**D.    American Family's Response**

Concerning Price's alleged conversation with Mr. Bereolos in August 2013, in which she claims to have announced her intent to move to Colorado, American Family "disput[es] the veracity of [Price's story]" because Mr. Bereolos "searched his agency records concerning [the Policy], which indicate [that American Family] was never informed [that] the 2013 Passat was permanently removed from Indiana and garage[d] in Colorado."  (ECF No. 33 at 4.)  American Family also points out that Price reports only that she had a conversation in August 2013 with Mr. Bereolos about the idea of moving back to Colorado, not that she told Mr. Bereolos when she would move.  (*Id.*)  Finally, American Family objects that Price's report of Mr. Bereolos's response is hearsay (*id.* at 3), although acknowledging that Bereolos's response may "constitute admissible hearsay of an admission by a party opponent" (*id.* at 5).  *Cf.* Fed. R. Evid. 801(d)(2)(D).

Concerning the hail damage claim in Colorado in 2015, American Family attaches excerpts from its claim log and emphasizes a line from that claim log where the adjuster wrote that Price reported "hail damage to [insured vehicle] while in CO[;] wanting to do repairs while they are here in the next 2 months."  (ECF No. 33-2 at 3.)  This, says American Family, "is a clear insight into [its] knowledge and belief, based upon [Price's] own statements, that the car was merely damaged 'while in Colorado,' and not principally located in Colorado."  (ECF No. 33 at 6.)  Finally, as for the hail

damage payment mailed to Price at her Colorado residence, American Family notes that the payee was Mr. Moore. (*Id.* at 7; *see also* ECF No. 32-3 at 1 (check stub issued to Mr. Moore at Price's Colorado address).)

Concerning Price's claims about her communications with Ms. Luce, American Family says that Price's affidavit "contains conclusory, vague, and hearsay statements." (ECF No. 33 at 8.) American Family also argues that none of the evidence supposedly in support of Ms. Luce's knowledge about Price's Colorado residents contains any statement from Price communicating her change of residence. (*Id.*)

Concerning Price's payment of the policy premiums, American Family responds that nothing about those payments communicated to American Family that Price had moved to Colorado. (*Id.* at 9.)

### III.  ANALYSIS

**A.     Need for Choice-of-Law Analysis**

There is no need to make a choice-of-law analysis if there is "no outcome-determinative conflict" between the jurisdictions whose laws potentially govern the claims. *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 946 F. Supp. 861, 866 (D. Colo. 1996). Here, an outcome-determinative conflict exists in at least three ways.

First, Indiana law allows UIM benefits to be offset by liability payments from a third party, and by medical payments under the policy itself, *see Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 530–31 (Ind. 2002), whereas Colorado does not, *see* Colo. Rev. Stat. § 10-4-609(1)(c). Thus, if Indiana law applies, Price's recovery for breach of contract, if any, must account for the $50,000 she received from the other party to the accident and the $10,000 American Family has already paid for medical coverage; whereas if Colorado law applies, neither of these amounts are permissible offsets.

Second, Price's claim for unreasonable delay/denial is based on a Colorado statute that has no Indiana analog outside of the workers' compensation context. (*See* ECF No. 28 at 11.) Thus, if Indiana law establishes American Family's statutory duties, the unreasonable delay/denial claim disappears.

Third, Indiana's version of the common-law bad faith tort requires "the plaintiff [to] establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability," *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002); whereas "preponderance of the evidence" is the burden in Colorado, *see* Colo. Jury Instr., Civil § 25:2 (4th ed., June 2019 update). The difference between the preponderance standard and the clear-and-convincing standard could easily be outcome-determinative.

However, American Family makes no argument as to Price's claim under the CCPA. Thus, American Family apparently concedes that the CCPA claim will go forward under Colorado law regardless.

For all these reasons, the Court finds that it must engage in a choice-of-law analysis, except as to the CCPA claim. "As this court is sitting in diversity, . . . Colorado choice of law principles must be applied in the present case." *Power Motive Corp. v. Mannesmann Demag Corp.*, 617 F. Supp. 1048, 1049 (D. Colo. 1985).

**B.    Price's Breach-of-Contract Claim**

1.    <u>General Principles & the Parties' Approach to Them</u>

Colorado generally follows the *Restatement (Second) of Conflict of Laws* (1971) ("Restatement") for contract claims. *Wood Bros. Homes v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979). Restatement § 193 provides as follows for contracts such as the Policy:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

However, comment d to this section says it is possible to conclude that, "following the issuance of the policy[,] the principal location of the risk has shifted to some other state."  In terms of deciding whether comment d applies, both parties cite the U.S. Supreme Court's decision in *Clay v. Sun Insurance Office Ltd.*, 377 U.S. 179 (1964), which both sides interpret as establishing that

> the principal location of an insured risk shifts when: (1) both the insured and the insured risk are located in a different forum than the one in which the contract was formed for the majority of the contract term; (2) the underlying contract is silent as to what law applies; and (3) the insurer had knowledge that the insured risk had shifted to another location.

(ECF No. 28 at 9; ECF No. 32 at 13.)

American Family argues that the first half of Restatement § 193 should dictate application of Indiana law, and that even if comment d and the *Clay* test apply, the third *Clay* factor is not satisfied.  (ECF No. 28 at 6–10.)[2]  In response, Price goes directly to what appears to be a more significant relationship analysis under Restatement § 6 (as contemplated under the second half of § 193), although often without citation to the relevant factors, and sometimes with citation to irrelevant factors.  (ECF No. 32 at 8–15.)

_____

[2] American Family does not dispute that the first and second Clay factors are satisfied. (*See id.* at 9–10.)

Because a more-significant-relationship (§ 6) analysis can override anything the Court finds under the first half of § 193 (including under comment d and *Clay*), the Court will address that first.  Moreover, as will be seen below, the more-significant-relationship factors cover everything that the Court would have discussed anyway in a § 193 analysis.

As relevant here, § 6 says that

> the factors relevant to the choice of the applicable rule of law include
>
> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

Restatement § 6(2).  And, for contract claims,

> the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their
relative importance with respect to the particular issue.

*Id.* § 188(2).

2. <u>Evaluating the Relevant Contacts</u>

 a. *Place of Contracting, Negotiation, and Performance (§ 188(2)(a)–
(c)).*

"[T]he place of contracting is the place where occurred the last act necessary . . .

to give the contract binding effect . . . ." *Id.* § 188 cmt. e.  The place of negotiation and

performance are, respectively, precisely what those words suggest.  *See id.*

Price offers no argument regarding place of contracting or negotiation, but it is

undisputed that the original policy on the Passat (the predecessor to the Policy) was

issued in Indiana, and the most recent renewal (*i.e.*, the Policy itself) still describes itself

as an "Indiana Family Car Policy."  However, apparently with place of performance in

mind, Price emphasizes that she paid the insurance premiums while living in Colorado.

(ECF No. 32 at 11–12.)

To carry any weight, place of performance (and, for that matter, place of

contracting and negotiation) presumes that the parties mutually understand where that

place is or will be.  *Cf.* Restatement § 188 cmt. e ("the place of performance can bear

little weight in the choice of the applicable law when . . . at the time of contracting it is

either uncertain or unknown").  Here, Price's evidence that American Family knew she

would be performing her side of the bargain in Colorado is

- Price's claim that she told Mr. Bereolos in August 2013 about her plan to
  move to Colorado;

- Price's inclusion of her phone number, with its Colorado area code, in
  e-mail correspondence with Ms. Luce about her payment method in early

2014; and

- American Family's knowledge and handling of Price's Colorado hail damage claim in 2015.

(*See* Part II.C, above.)[3]  The Court will discuss each of these allegations in turn.

Regarding Mr. Bereolos, American Family does not contend that his knowledge may not be imputed to the company.  Thus, Price's story raises a pure credibility question: did she call Mr. Bereolos to tell him she was moving to Colorado?  If she did, what did she say?  How specific was she?  And if Mr. Bereolos really responded that he could write insurance in Colorado, why did the parties continue to renew an "Indiana Family Car Policy"?

Regarding Price's communications with Ms. Luce, the inclusion of her phone number with a particular area code has no obvious relevance.  In the last ten to fifteen years, one's area code has become essentially meaningless as an indicator of where one currently lives.  The spread of cell phones and the elimination of most domestic "roaming" charges means that individuals tend to keep the same phone number wherever they may move.  Thus, the Court finds no significance in this particular assertion.

Regarding the hail damage claim, an important factual dispute exists.  On the one hand, American Family responded to, adjusted, and paid a hail damage claim in

---

[3] Price's additional allegation about receiving insurance cards showing her as a "named insured" (ECF No. 32-1 ¶¶ 12–13) is neither here nor there because she does not allege *how* she received her insurance cards.  If American Family (through Mr. Bereolos's office or otherwise) mailed those insurance cards directly to Price in Colorado, it would support Price's claim that American Family knew she was living in Colorado.  But she does not allege as much (unlike her claim that the hail damage check was mailed to her in Colorado, *see id.* ¶ 7) and it cannot be presumed given that transmission of insurance cards by e-mail has become increasingly frequent in the last several years.

Colorado.  On the other hand, American Family's adjusters' notes about that claim suggest that Price told the adjuster she and the vehicle were in Colorado only temporarily.

In short, there are at least two substantial factual disputes that cannot be decided on this record, and which prevent the Court from properly weighing the considerations enumerated in § 188(2)(a)–(c).

> b.  *Location of the Subject Matter of the Contract (§ 188(2)(d))*

Price asserts that she lived in Colorado with the Passat for about three-and-a-half years before the accident.  (ECF No. 32 at 10.)  Given this, she emphasizes the following language from a Tenth Circuit case applying the more significant relationship test:

> [T]he location of an insured property is not merely one factor to be balanced against others in determining the law governing the parties' rights under an insurance contract. Instead, it is the single most important factor in making this choice of law determination, and, as the case law demonstrates, is almost invariably controlling.

*Mitchell v. State Farm Fire & Cas. Co.*, 902 F.2d 790, 794 (10th Cir. 1990) (citations omitted).  But *Mitchell* involved a real property insurance claim, and all but one of the cases cited in *Mitchell* for the above-quoted proposition likewise involved real property insurance claims, not movable property such as automobiles.  Moreover, in the one case *Mitchell* cited regarding an auto insurance claim, the court applied the law of Connecticut (the driver's residence), even though the accident happened in Maine, stating that "the location of the accident does not bear a significant factual relationship to [the insurance company's] or Plaintiff's rights under the policy."  *McAllaster v. Bruton*, 655 F. Supp. 1371, 1373 (D. Me. 1987).

There is an obvious difference between insurance covering real (immovable) property and insurance covering automobiles. This Court does not read *Mitchell* to be establishing a more-significant-relationship principle outside of the real property context, especially given that *Mitchell* cited with approval a decision stating in the auto insurance context that the location of a car accident is not a significant factor when deciding choice-of-law for auto insurance.

That said, in the casualty insurance context, it nonetheless remains true that "[t]he location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state." Restatement § 193 cmt. b. Here, the Passat was in Colorado at the time of the accident and may have been in Colorado for more than three years before that. But, as with the factors previously considered, this factor only seems to have relevance if the parties mutually understand where the insured risk will be (at least most of the time). *Cf. id.* ("in the case of an automobile liability policy, the parties [*i.e.*, both of them] will usually know beforehand where the automobile will be garaged at least during most of the period in question"). If, as in this case, the driver knows that the vehicle will mostly be in one state, but the insurance company believes that the vehicle's primary location is in another state, it is difficult to see how this factor can be properly weighed.

In these circumstances, therefore, the question comes back to whether American Family understood that Price had permanently relocated to Colorado with the Passat. As with the factors considered above, the Court cannot properly weigh § 188(2)(d) without resolving a factual dispute through an evidentiary hearing.

c. *Domicile, Residence, Nationality, Place of Incorporation and Place of Business of the Parties (§ 188(2)(e))*

Price makes no specific argument about these considerations. As before, however, they seem irrelevant if the parties do not know each other's domicile, residence, etc., or if they have been misled into thinking that the other side's residence is in one state when it is actually in another. Nonetheless, it is worth noting that American Family itself is headquartered in Wisconsin, not Indiana.

3. <u>Synthesis</u>

Given the foregoing factual disputes, the Court must take evidence to establish the facts from which it could perform a proper choice-of-law analysis. In particular, the Court needs answers to the following:

- When, after Mr. Moore leased the Passat, did Price move her domicile to Colorado?

- Did she tell Mr. Bereolos or Ms. Luce about that move, and, if so, what did she say? What did they say in response?

- What did American Family understand about Price's residence when it adjusted her hail damage claim in 2015?

- What would American Family have done differently if it had known (assuming it did not) about Price's move to Colorado?

For the reasons explained in Part III.E, below, the Court will set a hearing to address these questions on the day *after* the upcoming jury trial is scheduled to conclude.[4]

---

[4] Price additionally argues that "the court is authorized not to apply the choice of law stated in an insurance contract if doing so would violate a fundamental policy of the state having a more substantial relationship to the particular issue." (ECF No. 32 at 8.) She then goes on to argue that Colorado law prohibiting reduction of UIM limits is a strong enough policy to override the potential application of Indiana law. (*Id.* at 8–9.) As Price has framed the argument,

**C.     Statutory Unreasonable Delay/Denial**

In a case involving breach of insurance contract and statutory unreasonable delay/denial, Senior U.S. District Judge Lewis T. Babcock held that, "[o]nce it has been determined that the law of a particular state governs the interpretation of an insurance contract, any statutory insurance claims that implicate performance of the contract must also be raised under the law of the controlling state." *Werden v. Allstate Ins. Co.*, 667 F. Supp. 2d 1238, 1245 (D. Colo. 2009).  Citing this decision, American Family argues that Indiana law applies to the insurance contract and therefore its statutory duties, thus eliminating Price's statutory unreasonable delay/denial claim.  (ECF No. 28 at 11–12.)

The Court need not decide whether it agrees with Judge Babcock's holding because Price nowhere contests it.  She simply argues that Indiana law does not apply.  Accordingly, the Court deems her to confess that *if* Indiana law applies to the insurance contract, it also governs American Family's statutory duties relating to the insurance contract.  Accordingly, the viability of the unreasonable delay/denial claim will turn on what law the Court finds to apply to the contract dispute.  Again, that finding must await an evidentiary hearing.

**D.     Common Law Bad Faith**

1.     <u>General Principles</u>

"Claims for bad faith breach . . . of an insurance contract sound in tort."  *Pham v.*

_____

however, her initial premise is incorrect.  When she wrote the phrase, "the court is authorized not to apply the choice of law stated in an insurance contract," she should have immediately recognized that the principle does not apply because there is no choice of law stated in the insurance contract.  Moreover, she cites Restatement "§ 187(b)" in support, but § 187(b) does not exist.  Presumably she refers to § 187(2)(b), which says that the law chosen by the parties in their contract need not govern if "application of [that state's law] would be contrary to a fundamental policy of a state which has a materially greater interest."  But again, the parties have not chosen any law.  Thus, Price's argument that public policy can override a choice-of-law clause has no connection to the facts of this case.

*State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 571 (Colo. App. 2003). Although they are obviously connected to the insurance contract, they "exist independently of the liability imposed [there]." *Id.* Indeed, it is possible to be liable for common-law bad faith even if it turns out that the insurance policy does not provide coverage for the injury giving rise to the claim. *See Domokos v. Shelter Mut. Ins. Co.*, ___ F. Supp. 3d ___, ___, 2019 WL 4645430, at *17–18 (D. Colo. Sept. 24, 2019). Thus, the Court must analyze Price's bad faith claim separately, and as a tort, despite its connection to the insurance contract.

Just as for contract claims, Colorado follows the Restatement for tort claims. *See First Nat'l Bank v. Rostek*, 514 P.2d 314, 320 (Colo. 1973). The Restatement says the following regarding torts:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement § 145.

2. <u>Evaluating the Relevant Contacts</u>

a. *Place Where the Injury Occurred (§ 145(2)(a))*

The injury in a bad faith claim is the destruction of the insured's peace of mind and trust in the insurer, and the economic hardship that might result from not receiving insurance payments. *See Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116, 119 (Colo. 2010). If that happened in this case, it happened to Price in Colorado.

b. *Place Where the Conduct Causing the Injury Occurred (§ 145(2)(b))*

No party says anything about this directly. American Family is headquartered in Wisconsin, so if it made any decisions in bad faith, presumably it made them from Wisconsin. In any event, American Family does *not* argue that its relevant decision makers were in Indiana. At a minimum, then, there is no Indiana contact to consider here, regardless of whatever other contacts may be present.

c. *Domicile, Residence, Nationality, Place of Incorporation and Place of Business of the Parties (§ 145(2)(c))*

Although American Family disputes precisely when Price became a Colorado resident, there appears to be no dispute that she has been a Colorado resident since the February 2017 car accident—the relevant time period when assessing bad faith. As for American Family, as noted, it is headquartered in Wisconsin.

d. *Place Where the Relationship, if any, Between the Parties is Centered (§ 145(2)(d))*

American Family argues that the parties' relationship is centered in Indiana. (ECF No. 28 at 14–15.) The Court may find as much with respect to the contract claim. For bad faith, however, the Court finds that the "center" of the relationship must be judged with respect to the parties' locations during the adjustment of the claim. That

relationship—from reporting of the claim forward—is the basis of bad faith. The center

of that relationship is either Colorado or Wisconsin, but certainly not Indiana. Because

American Family has not argued for Wisconsin law in any respect, the Court must, by

default, find that Colorado is the center of the relationship leading to the bad faith claim.

    3.   <u>Synthesis</u>

Having established these contacts, the Court must consider them in light of the

§ 6 factors, which are, again:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

Restatement § 6(2).

Needless to say, these factors are broad and vague, and thus provide little

direction. Having considered them nonetheless, the Court finds the following points

most salient.

None of the relevant contacts point toward Indiana. American Family's best

countervailing argument, if it were true, would be under the "protection of justified

expectations" prong (§ 6(2)(d))—more specifically, that it set Price's insurance

premiums under the assumption that Indiana law would apply to any tort claim arising

from the Policy. But American Family nowhere says as much. The only evidence it

submits that comes close is an affidavit from one of its underwriting specialists, who says that American Family considers matters such as "place of residence" and "where the car will be parked and used" when "assessing a person's risk before approving a car insurance policy." (ECF No. 28-4 ¶ 3.) The specialist further says that, if American Family had known of the move to Colorado, it would have triggered "a complete rewrite of the insurance policy." (*Id.* ¶ 4.) But American Family does not say that each particular state's burden of proof for bad faith claims would make any difference.

Moreover, according to this same underwriting specialist, American Family knew no later than March 8, 2017 (one month after the accident) that Price "was living in Colorado." (*Id.* ¶ 7.) Thus, American Family knew from nearly the beginning of the claim (if not earlier) that it would be dealing with a Colorado resident in Colorado, and therefore would be at least arguably subject to Colorado law regarding adjustment of insurance claims. It promotes certainty, predictability, and uniformity of result to require an insurance company to adjust a Colorado resident's claim arising from an accident in Colorado according to Colorado's standards.

For these reasons, the Court finds that Colorado law applies to Price's common-law bad faith claim.[5]

## E.    Going Forward

Although the Court needs an evidentiary hearing to properly evaluate choice-of-law for Price's contract claim (and, by extension her unreasonable delay/denial claim), the Court does not need to hold that evidentiary hearing before trial. The contract

---

[5] To be clear, the Court would still find as much even if the center-of-the-relationship factor (*see* Part III.D.2.d, above) should focus on the relationship before the claim, and even if the Court were to find that the relationship is centered in Indiana. The weight of contacts with Colorado nonetheless counsels in favor of applying Colorado law regarding bad faith.

choice-of-law dispute is, strictly speaking, not ripe unless and until a jury awards more than $40,000 for that claim and/or the jury finds in Price's favor on her unreasonable delay/denial claim.  If that happens, then the Court can finally resolve the choice-of-law issue and, if it decides in favor of American Family, apply the offsets permitted under the Policy in Indiana law before entering judgment.

The Court recognizes that the unreasonable delay/denial claim would go away entirely if the Court were to decide now that Indiana law applies.  However, Price will be going forward anyway on her claim for common-law bad faith.  In terms of liability, the only substantial difference between a common-law bad faith claim and a statutory unreasonable delay/denial claim is that the common-law claim requires the plaintiff to prove one extra element, namely, that the insurance company knew it was acting unreasonably, or recklessly disregarded the fact that it was acting unreasonably. *Compare* Colo. Jury Instr., Civil § 25:2 (common-law elements) *with id.* § 25:4 (statutory elements).  In other words, a party making a common-law case will present the same evidence that he or she would present in a statutory case, plus some.  American Family would, consequently, suffer no prejudice to defend against the unreasonable delay/denial claim alongside the bad faith claim, nor would the trial be unduly lengthened.  If the jury finds for Price on the unreasonable delay/denial claim but the Court ultimately rules that Indiana law applies, the Court may simply vacate the verdict on that claim.

This case is scheduled for a four-day trial beginning on Monday, September 14, 2020.  The Court finds it prudent under the circumstances to schedule an evidentiary hearing for the Friday of that week (September 18), so the parties may present their

evidence regarding what American Family knew about Price's relocation to Colorado. Again, whether this evidentiary hearing goes forward will turn on whether the jury renders a verdict that brings the contractual choice-of-law issue into play.

## F.     Final Observations

Price's evidence—at least as presented here—is sufficient to show the need for an evidentiary hearing, but the outcome of that hearing is far from clear.  If American Family's claim notes from the June 2015 hail damage claim really mean what they seem to say, American Family has competent evidence that Price may have been misleading American Family about the Passat's usual "residence."  If the Court were to find as much, it could suggest that Price is not testifying truthfully when she says she informed Mr. Bereolos about the move to Colorado ahead of time.

On the other hand, the bad faith and CCPA claims against American Family will be going forward regardless, so American Family faces exposure no matter the outcome of the choice-of-law issues.

All of which is to say that both sides should think carefully about the propriety of settlement.  Any motion from the parties to set a settlement conference before the magistrate judge would be promptly granted.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     American Family's Motion for Determination of Law that Indiana Law Applies (ECF No. 28) is DENIED as to Price's claim for common-law bad faith breach of insurance contract, and the Court RESERVES RULING on the remainder of the motion;

2.    The Court hereby SETS an evidentiary hearing for **September 18, 2020,**

**beginning at 9:30 a.m.,** in Courtroom A801.  In advance of that hearing, the

parties shall familiarize themselves with the undersigned's Revised Practice

Standards (revised effective Dec. 1, 2019) with regard to evidentiary hearings,

and with particular emphasis on WJM Revised Practice Standard V.F.1, which

requires the parties to meet and confer regarding the proposed exhibits and, to

the maximum extent possible, stipulate to the authenticity and admissibility

thereof.  The parties are also encouraged to consult the "Morning-of-Trial

Deliverables" portion of the undersigned's Trial Preparation Conference & Pretrial

Checklist, available at http://www.cod.uscourts.gov/JudicialOfficers/

ActiveArticleIIIJudges/HonWilliamJMartinez.aspx.

Dated this 27th day of February, 2020.

BY THE COURT:

William J. Martinez
United States District Judge